UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Bledi Gjergji,

    Plaintiff,

v.                                                                 Civil Case No. 20-cv-12259

Evanston Insurance Co.,                      Sean F. Cox
                                                        United States District Court Judge

    Defendant.
_____/

## **OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

This is an insurance coverage dispute. Plaintiff, Bledi Gjergji ("Gjergji") sued Defendant, Evanston Insurance Company ("Evanston") for breach of contract. The matter currently before the Court is on Evanston's Motion to Dismiss Plaintiff's Amended Complaint, brought pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, this Court DENIES Evanston's motion to dismiss the Amended Complaint because Gjergji has alleged plausible facts to state a claim under the Policy.

### BACKGROUND

On July 13, 2020, Gjergji commenced this action in Oakland County Circuit Court. (Compl. ECF No. 1-1 at PageID 12). On August 20, 2020, Evanston removed the matter to this Court based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1).

On August 27, 2020, Evanston moved to dismiss pursuant to Rule 12(b)(6). (ECF No. 4). In an order regarding that motion, this Court granted Plaintiff the opportunity to file an amended complaint. (ECF No. 7).

1

Plaintiffs filed an Amended Complaint on September 22, 2020. (ECF No. 10). As such, that pleading superseded and replaced the original complaint. The filing of this new pleading also rendered moot the motion to dismiss pursuant to Rule 12(b)(6) (ECF No. 4) that challenged the original complaint.

Because this matter comes before the Court on a motion to dismiss the Amended Complaint, the following allegations in Gjergji's Amended Complaint are taken as true. (ECF No. 10); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Gjergji operates a used car dealership known as House of Cars. (Am. Compl. at 2). Gjergji purchased a commercial property insurance policy from Evanston for the property he used to operate House of Cars ("Property"). (Am. Compl. at 2). The Property consists of a two story building surrounded by an asphalt parking lot. The policy covered the time period from April 16, 2019 through April 16, 2020. (Am. Compl. at 2). The policy provided limits of insurance coverage of $285,000 (replacement cost valuation) for the Property. (Am. Compl. at 2). All premiums were paid and current at the times of the incident at issue. (Am. Compl. at 2).

On July 23, 2019, a half inch domestic water line broke in the north office room of the building on the Property and into an open fifty-five gallon plastic drum that was partially filled with used motor oil, transmission fluid, power steering fluid, and brake fluid. (Am. Compl. at 2-3). The water from the broken line, as well as the fluids and oils from the drum, flooded most of the building on the Property. (Am. Compl. at 3).

On July 30, 2019, Gjergji notified Evanston of the loss. (Am. Compl. at 3). On August 3, 2019, Evanston's agent, Matthew Brown, inspected the Property and determined that the replacement costs of the loss was $19,050.70. (Am. Compl. at 3; ECF No. 10-4). Evanston relied

2

on Brown's report and issued a "partial" payment on the Policy on August 7, 2019 in the amount of $12,431.80 (considering depreciation and a $2,500 deductible). (Am. Compl. at 3; ECF No. 10-5).

Gjergji requested another inspection. (Am. Compl. at 3). On October 3, 2019, Tyler Lenling of TEK Environmental inspected the property. (Am. Compl. at 3; ECF No. 10-6). TEK's report indicated that the Property was a total loss due to pervasive waste oil and hydrocarbon contamination as well as fungal and microbial growth. (TEK Report, ECF No. 12-4 at PageID 780).

On December 9, 2019, Gjergji's counsel, Tim Sulolli ("Sulolli") informed Evanston's agent, Kimberly Dickson ("Dickson") that they would be "making a claim for the full policy limits on this matter." (Am. Compl. at 3-4; ECF No. 12-4 at PageID 767). Sulolli attached TEK's report to his email. (ECF No. 12-4). On January 8, 2020, Dickson responded to Sulolli saying that she reviewed TEK's report and the Policy excluded coverage for pollutants. (Am. Compl. at 4).

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the plaintiff's complaint. To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Although the Court must accept all well-pleaded factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Thus, to avoid dismissal, "a complaint must contain sufficient factual matter," accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts." *Id*.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

"[C]onstruction and interpretation of an insurance contract is a question of law . . . ." *Henderson v. State Farm Fire and Casualty Co.*, 460 Mich. 348, 353 (1999). In this case, the Court interprets the language of the insurance policy and its terms in accordance with Michigan's well-established principles of contract construction. *Id*. "An insurance contract must be enforced in accordance with its terms. We will not hold an insurance company liable for a risk it did not assume." *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 111 (1999).

Michigan courts engage in a two-step process when determining coverage under an insurance policy: "(1) whether the general insuring agreements cover the loss and, if so, (2) whether an exclusion negates coverage." *K.V.G. Properties, Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018) (citing *Auto-Owners Ins. Co. v. Harrington*, 455 Mich. 377 (1997).

Ambiguities in an insurance contract are construed in favor of the insured. *Masters*, 460 Mich. at 111. However, the court will not create an ambiguity where the terms of the contract are clear. *Id*. "The fact that a policy does not define a relevant term does not render the policy ambiguous." *Henderson*, 460 Mich. at 354. The Court "will interpret the terms of an insurance contract in accordance with their commonly used meaning." *Masters*, 460 Mich. at 111. (quotations removed). Whether contract language is ambiguous is a question of law. *Henderson*, 460 Mich. at 353. Where there is no ambiguity, the Court will enforce the terms of the contract as written. *Masters*, 460 Mich. at 111.

The essence of Gjergji's claim is that the $12,341.80 valuation of the damage by Evanston's agent was inaccurate and in relying on it and refusing to pay Gjergji's claims for more coverage, Evanston has breached the Policy. (Am. Compl. at 6). Under the Policy, Evanston is obligated to "pay for direct physical loss of or damage to covered property at the

5

premises described in the declarations caused by or resulting from any covered cause of loss." (Policy, ECF No. 12-2 at PageID 580). However, the Policy excludes "the discharge, dispersal, seepage, migration, release, escape, or existence of contaminants or "pollutants."" (ECF No. 12-5 at PageID 803). The exclusion applies regardless of whether there is any "other cause of loss that contributes concurrently or in any sequence to the existence of a "pollutant."" (ECF No. 12-5 at PageID 803). The parties do not dispute that the oils and fluids in the drum constitute a "pollutant" under the Policy. (Pl's Br. at 12). Thus, the Court must determine whether Gjergji's claimed losses are precluded by the pollutant exclusion.

In the Amended Complaint, Gjergji alleges that the "damage to the Property was due to a covered cause of loss, specifically the broken water line." (Am. Compl. at 5). Gjergji alleges that the TEK report "clearly reveals that the damage to the Property is from either water or water mixed with oils/fluid due to a broken water line and is therefore a covered [] loss." (Am. Compl. at 5). Gjergji argues that the pollutants exclusion is inapplicable to his claim because "it is not possible to separate damage to the Property solely caused by oil/fluids since it mixed with water and that "mix" caused damage as noted in the TEK Environmental report." (Am. Compl. at 5).

In its brief, Evanston notes that "all of the damages over and above what Evanston has already paid, were caused by either pollutants (i.e., the mixture of oil and other vehicle fluids) or organic pathogens (i.e., mold, fungus and microbial growth)." (Def's Br. at 11). Evanston further urges that Gjergji's argument – that it is not possible to separate the water damage from the oil/fluids damage – is effectively the "concurrent cause" doctrine, which the Supreme Court of Michigan has expressly declined to adopt. (Def's Br. at 12).

The concurrent causation doctrine applies when "two or more identifiable causes, at least one of which is covered under the policy and at least one of which is excluded thereunder, contribute to a single loss." *Iroquois on the Beach, Inc. v. General Star Indem. Co.*, 55 F.3d 585, 588 (6th Cir. 2008) (quoting 7 Steven Plitt *et al.*, COUCH ON INSURANCE §101:45 (3d ed. 2008)).

> Under this doctrine, "[i]f the cause which is determined to have set the chain of events in motion, the efficient proximate cause, is covered under the terms of the policy, the loss will likewise be covered." Jurisdictions that have adopted this doctrine generally allow parties to contract out of its application by adopting an anti-concurrent, anti-sequential clause.

*Id*. (citations removed). However, the Supreme Court of Michigan "has expressly declined to adopt this doctrine." *Id*. "Thus, the default rule under Michigan law is that a loss is *not* covered when it is concurrently caused by the combination of a covered cause and an excluded cause." *Id*.

In *Iroquois*, an insurer denied coverage for damage to a building based on the policy's exclusion for continuous water leakage that occurred for more than two weeks. *Id*. at 587. The plaintiff argued that windstorms – a covered loss under the policy – caused the leakage and therefore the leakage should be also be covered. *Id*. In applying Michigan law, the Sixth Circuit rejected this concurrent causation argument and stated, "**[t]he record clearly shows** that the seepage or leakage of water occurred for at least fourteen days, thus triggering the exclusion to prevent insurance coverage." *Id*. at 589 (emphasis added).

Evanston urges the Court to find that *Iroquois* is analogous to the facts at hand here (Def's Br. at 12-13), but there is an important distinction: the Sixth Circuit in *Iroquois* was reviewing the district court's decision on a motion for summary judgment, not a motion to dismiss pursuant to 12(b)(6). *Id*. at 587.

For the purposes of a motion to dismiss, the Court must accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 555. Here, Gjergji has alleged in the Amended Complaint that the damage to the Property is "from either water **or** water mixed with oils/fluids due to a broken water line . . . ." (Am. Compl. at 5) (emphasis added). The parties do not dispute that the water damage is covered by the Policy, and Evanston has already paid Gjergji to compensate him for the water damage that the Evanston agent valued at $12,341.80. (Am. Compl. at 3). If the record clearly showed the cause of the damage to be a pollutant, Michigan's anti-concurrent causation rule may apply and exclude additional coverage, but the parties have not yet had the benefit of discovery to build such a record to determine causation. Evanston's arguments would be better suited for a motion for summary judgment once such a record is established. For the present motion, the Court must accept Gjergji's well-pleaded factual allegation that the damage was caused by "either water **or** water mixed with oils/fluids" as true. (Am. Compl. at 5) (emphasis added); *Twombly*, 550 U.S. at 555.

Evanston emphasizes that this allegation conflicts with the subsequent paragraph in the Amended Complaint that states, "it is not possible to separate damage to the Property solely caused by oil/fluids since it mixed with water . . . ." (Def's Reply at 6; Am. Compl. at 5). Evanston argues that Gjergji's seemingly conflicting allegations equate to an admission that the losses were caused by the combination of water and pollutants. (Def's Reply at 6). However, "if an allegation is capable of several inferences, the allegation must be construed in a light most favorable to the plaintiff." *Mayer*, 988 F.2d at 638. Therefore, the Court declines to adopt Evanston's interpretation and construes the Amended Complaint to include an allegation that water damage could have caused damage worth more than Evanston's initial valuation.

8

For these reasons, the Court finds that Gjergji has sufficiently alleged facts that could entitle him to legal relief.

## CONCLUSION

For the reasons explained above, the Court DENIES Evanston's motion to dismiss the Amended Complaint because Gjergji has alleged plausible facts to state a claim under the Policy. IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: March 2, 2021